IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

HUBERT MILLER                                                    PLAINTIFF

v.                                    CIVIL ACTION NO.: 1:11-CV-00014-GHD

METRO FORD AUTOMOBILE SALES, INC.                               DEFENDANT

MEMORANDUM OPINION
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before this Court is a motion for summary judgment [51] filed by Defendant,

Metro Ford Automobile Sales, Inc. ("Defendant" or "Metro Ford"). After due consideration, the

Court finds the motion [51] should be granted.

*A. Factual and Procedural Background*

Plaintiff Hubert Miller ("Plaintiff") brings this action to recover actual and liquidated

damages for alleged violations of the Age Discrimination in Employment Act of 1967 (the

"ADEA") and the Fair Labor Standards Act (the "FLSA"), invoking the Court's federal question

jurisdiction.

Plaintiff was employed as a car salesman at Metro Ford from August 2008 until his

termination in April 2010. Plaintiff alleges that during his approximate two-year employment at

Metro Ford, he was discriminated against due to his age, and that he was terminated in retaliation

for his wage- and age-related complaints. During his time at Metro Ford, Plaintiff alleges he was

treated less favorably than younger salesmen due to the friendship between the younger salesmen

and Plaintiff's superior. Plaintiff alleges his superior often denied sales to him that were given or

referred to the younger salesmen and otherwise favored the younger salesmen. Plaintiff alleges

that he complained to his supervisor, Metro Ford's general manager, Beyron Erby, that he was

underpaid, and that Erby responded by asking him why he was still there and telling him to "get his shit and leave." *See* Pl.'s Dep. [61-1] at 96. Plaintiff maintains he then complained to Metro Ford's sales manager, Kenny Johnson, about the perceived favored treatment younger salesmen were receiving and his feelings that he should be compensated for all of the hours he worked. Due to Plaintiff's dissatisfaction with his work environment at Metro Ford, on March 28, 2010, Plaintiff maintains he compiled his work-related frustrations in a letter addressed to the EEOC which stated that he was treated unfairly compared to other employees, not afforded equal employment opportunities, and paid for only forty hours of work when he had actually worked fifty-five hours. The letter did not expressly state that the perceived unfair treatment was due to Plaintiff's age. Although Metro Ford contends it never received a copy of this letter, Plaintiff maintains he tried to hand-deliver the letter to Johnson, who allegedly refused to accept the letter due to instructions from Erby not to acknowledge receipt of anything from Plaintiff.

On April 25, 2010, Plaintiff maintains he was told he would be written up for not reporting to work on the previous Sunday, which Plaintiff says was a nonmandatory attendance day. By all accounts, Defendant terminated Plaintiff on April 26, 2010. Plaintiff was fifty-one years old at the time. Plaintiff claims that he was fired due to his age, his informing Defendant of his complaints of age discrimination and that he was filing an EEOC charge, and his complaining of acts that would constitute violations of the ADEA and the FLSA. Defendant contends that Plaintiff was terminated for selling a car outside the terms of a consignment agreement between Metro Ford and the car owner, who was also a Metro Ford car salesman. Plaintiff denies this and contends that Metro Ford's articulated reason for his termination is mere pretext; Plaintiff argues that Metro Ford unlawfully and willfully discriminated against him. Plaintiff timely filed two formal EEOC charges of discrimination wherein he charged that he was

2

the victim of age discrimination and retaliation. *See* EEOC Charges [43-1] at 4–5. Upon receipt of his right to sue letters in connection with both EEOC charges, Plaintiff brought this action in this Court. He seeks damages for lost income, liquidated damages, and reasonable attorneys' fees. Defendant filed a motion for summary judgment [51] on December 7, 2011.

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to

3

preclude summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1985).

## C. Discussion and Analysis

Plaintiff's age discrimination claim under the ADEA and retaliation claims under the ADEA and the FLSA are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[1]

### 1. Age Discrimination Claim

Plaintiff alleges that Metro Ford discriminated against him due to his age in violation of the ADEA. Under the ADEA, it is "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). A plaintiff bringing an ADEA claim "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). "[F]or an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (citing *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (internal quotation marks omitted)); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th

---

[1] Although the United States Supreme Court has not definitively resolved whether the *McDonnell Douglas* framework is applicable to the ADEA, *see Gross*, 557 U.S. 167, 129 S. Ct. at 2349 n.2, this Court is bound to follow Fifth Circuit precedent, which holds that the *McDonnell Douglas* framework applies to ADEA actions. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

Cir. 1995)). Because Plaintiff offers no direct evidence of age discrimination, the *McDonnell Douglas* framework applies. "To demonstrate [a prima facie case of] age discrimination a 'plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge [i.e., at least 40 years old]; and (4) he was either i) replaced by someone outside the protected class [i.e., under the age of 40], ii) replaced by someone younger, or iii) otherwise discharged because of his age.' " *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (internal quotation marks and citation omitted)). "The first three elements of a prima facie case of age discrimination under the ADEA are identical to the first three elements of a Title VII prima facie case." *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (internal citation omitted).

If the plaintiff establishes a prima facie case of age discrimination, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922 (internal citations and quotation marks omitted). A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' " *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The plaintiff must prove that "discriminatory animus was the 'determinative basis for his termination.' " *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005) (quoting *Rachid*, 376 F.3d at 310). "As a practical matter, this requirement dictates that the plaintiff put forward evidence rebutting each

5

one of a defendant's non[-]discriminatory explanations for the employment decision at issue. . . .
This approach differs from that used in the mixed-motive analysis, under which a plaintiff need
only prove that discriminatory animus was a 'motivating factor' in an adverse employment
decision." *Id.* at 351–52 (internal footnotes and citations omitted).

### a. Prima Facie Case

It is undisputed that Plaintiff was discharged and within the protected class, as he was
fifty-one years of age at the time of discharge. It may be easily inferred that Plaintiff was
qualified for the position. However, the parties dispute whether Plaintiff has satisfied the fourth
prong.

The record does not support that the Plaintiff was replaced by someone outside the
protected class. Thus, Plaintiff attempts to show that he was "otherwise discharged because of
his age." *See Rachid*, 376 F.3d at 309. Plaintiff has presented some proof that he was otherwise
discharged because of his age, including his testimony and the testimonies of former salesmen
tending to show that certain younger salesmen received more favored treatment than the Plaintiff
did with respect to sales; that Plaintiff's supervisor, general manager Beyron Erby, repeatedly
asked him why he was still working at Metro Ford; and that his complaints of work-related
problems went unheeded and ultimately resulted in his termination. The Fifth Circuit has stated
that the plaintiff "need only make a very minimal showing" to establish a prima facie case.
*Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (internal citation omitted). In
addition, "purely indirect references to an employee's age . . . can support an inference of age
discrimination." *Machinchick*, 398 F.3d at 353 (internal footnote and citations omitted) (finding
company vice president's remarks in e-mail to human resources that plaintiff had "[l]ow
motivation to adapt" to change, as well as his remarks in his deposition that plaintiff was

6

"inflexible," "not adaptable," and possessing a "business-as-usual attitude" supported inference of age discrimination). *See Rachid*, 376 F.3d at 315; *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466 (5th Cir. 1989).

In viewing the evidence in the light most favorable to the Plaintiff, which the Court must do at the summary judgment stage, the Court finds that Plaintiff has met his burden of establishing a prima facie case of age discrimination under the ADEA. Assuming, *arguendo*, that Plaintiff has established a prima facie case of age discrimination, Metro Ford must provide a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff.

### b. Legitimate, Nondiscriminatory Reason

Metro Ford contends it terminated Plaintiff solely due to his involvement in an incident in which he sold a car that Metro Ford had on consignment outside the terms of the consignment agreement, and in so doing, "intentionally misled a customer into believing that the customer was purchasing a vehicle from Metro Ford." Def.'s MSJ [51] ¶ 2. Metro Ford had the right to sell a 2003 Lincoln Aviator belonging to one of its salesmen, David Turner, pursuant to the terms of a consignment agreement entered into between Metro Ford and Turner. The terms of the agreement allowed Turner through Metro Ford to sell the vehicle through either a visual storefront or an online marketplace. Turner was required to pay Metro Ford 100% of any excess over $7,800.00.

Plaintiff had worked with a customer, Rod Matthews, on the possible purchase of a Chrysler vehicle from Metro Ford. When the deal fell through, Plaintiff spoke to Matthews about the possible purchase of Turner's 2003 Lincoln Aviator. Metro Ford contends that Plaintiff represented to Matthews that he would be purchasing the vehicle from Metro Ford.

Metro Ford maintains that an individual named Kevin Beeks helped Matthews to purchase the Aviator, and Beeks testified that throughout the process, he believed Plaintiff was acting on Metro Ford's behalf and that he was purchasing the vehicle from Metro Ford. Metro Ford maintains that Plaintiff ultimately sold Turner's 2003 Lincoln Aviator to Matthews, but this sale was outside the terms of the consignment agreement and for Plaintiff's own benefit.

Beeks testified that after the purchase of the vehicle he tried several times to contact Plaintiff to ask about obtaining an extra set of keys for the Aviator, but after he was unable to reach the Plaintiff, he spoke to Metro Ford's general manager, Beyron Erby. Beeks testified that it was at this point that he first learned the Aviator had not been sold by Metro Ford, but by Plaintiff as an individual. Beeks testified that he told Erby he would not have knowingly purchased the vehicle through Plaintiff as an individual. Metro Ford maintains that Erby reviewed the company's computer system, only to find that Metro Ford had received none of the proceeds of the sale of the Aviator. It is Metro Ford's position that Plaintiff knew the vehicle was on consignment with Metro Ford, and could not have known the selling price of the vehicle unless he had asked someone in Metro Ford's sales office. Metro Ford asserts that subsequent to Erby's discovery on the computer system, Erby spoke to Beeks, Matthews, and Turner about the situation. Metro Ford maintains that Turner said he and the Plaintiff had discussed the possibility of making more money on the sale of the Aviator if they bypassed Metro Ford. Subsequently, Metro Ford maintains that Turner voluntarily quit his employment with Metro Ford and Metro Ford then terminated the Plaintiff for misrepresenting himself to the customer and for selling the Aviator outside the terms of the consignment agreement, an incident Metro Ford characterizes as "in essence, [a] theft" and "at a minimum, . . . dishonest or unethical conduct, all of which is expressly prohibited under Metro Ford's Employee Handbook." Def.'s

Mem. Br. Supp. MSJ [52] at 9. The handbook, attached as an exhibit to Metro Ford's submissions, provides in pertinent part: "The continued success of [Metro Ford] is dependent upon customers' trust and we are dedicated to preserving that trust. Employees owe a duty to [Metro Ford], its customers, and shareholders to act in a way that will merit the continued trust and confidence of the public." Metro Ford Co. Policy [51-8] at 2. Defendant maintains that "[Plaintiff] is not protected from having his employment terminated simply because he is over the age of 40 when there is direct evidence of misconduct and/or fraud, as in the instant action." Def.'s Mem. Br. Supp. MSJ [52] at 10.

Assuming, *arguendo*, that Plaintiff has made a prima facie case of age discrimination and Defendant has sufficiently rebutted this presumption by offering a legitimate, nondiscriminatory reason for Plaintiff's termination, the Court must next examine whether the Plaintiff has proven pretext.

### c. Pretext

Plaintiff maintains in response to Metro Ford's articulated reason for the termination the following: (1) Plaintiff was not aware of the consignment agreement, only that Turner had parked the 2003 Lincoln Aviator out in front at Metro Ford and was trying to sell the vehicle, *see* Pl.'s Dep. [51-2] at 9, 11, Pl.'s Dep. [61-1] at 25;[2] (2) Plaintiff had never sold a vehicle that was on consignment with Metro Ford and had "never heard of consignment in the car business," Pl.'s Dep. [61-1] at 26; and (3) Plaintiff suspects that the consignment agreement was executed after the incident in question, but admittedly has "no proof" of same, *id.* at 47. Plaintiff strongly

---

[2] The Court notes that former Metro Ford car salesman Willie Gardner testified by deposition in contrast that he had been familiar with the fact that Turner's 2003 Lincoln Aviator was on consignment with Metro Ford, because "as a salesperson, . . . you get a list of cars that's on the lot. And . . . if you brought your vehicle and spoke with [Erby] about selling it, you know, sometimes it wasn't on that list. So you go to [Erby] . . . . And he would explain this is such and such, this is the price I want for the vehicle and such. So when he told you these things, you knew it was a consignment vehicle. Because it wasn't a vehicle brought in by Metro Ford." Gardner Dep. [61-4] at 75.

denies selling the Aviator, and maintains that he simply referred the customer to Turner by telling Matthews: "[T]his guy here is trying to sell his car. It may be in your price range what you've been approved for." *See id.* at 8. Plaintiff contends that the only money he received in connection with the sale of the Aviator was a $100 referral fee or "bird dog" from Turner.

However, following his termination, Plaintiff says Matthews called the Plaintiff on his cell phone "I guess [because] he felt guilty. All he was saying was it's going to be all right, man, it's going to be all right. **I'm like, man, do you know what you just did?** He said it's going to be all right. That was the extent of the conversation." Pl.'s Dep. [61-1] at 39–40 (emphasis added). Plaintiff testified that he supposed "[Matthews] was trying to consult me as far as getting me fired or whatever or having a hand in getting me fired. I don't know." *Id.* at 40. This exchange, particularly Plaintiff's comment "I'm like, man, do you know what you just did?" shows that Plaintiff is acknowledging he understood, at least at that time, that he was terminated due to his involvement in the sale of the Aviator.

Plaintiff alleges Metro Ford's reason for the termination was pretextual and Metro Ford's real reason for terminating him was due to his age. In support of this argument, Plaintiff asserts that the workplace environment at Metro Ford was a "buddy situation" in which superiors had "childish ways and attitudes" and lack of respect towards Metro Ford employees. *See* EEOC Letter [43-1] at 1–3. Plaintiff asserts that Metro Ford's age-based discrimination against him first presented itself in the less favorable treatment Plaintiff received with respect to sales, which were often denied to him and given to younger salesmen based on those salesmen's friendships with Erby, and that this discrimination culminated in the Plaintiff's termination from his job. The Plaintiff testified in his deposition:

> A: [Erby] and some of his little younger friends, they had little ways of trying to—in the car business, it's called . . . graveyard

diggers, where they try to run you off to keep you from being competitive against them as far as them making sales. And he had it in with his little younger friends that they do this all the time . . . . And I became aware of it pretty quick as far as seeing what they were trying to do and what they were doing.

Q: Who are [Erby's] younger friends that you're talking about?

A: Eric Fuller [thirty-nine years old], Chip Long [forty-five years old], Kirk Boyd [forty-seven years old], David Vaughan [forty-five years old], Mark Best [forty-six years old].

Pl.'s Dep. [61-1] at 22. In Plaintiff's view, "[Erby] never seemed to take the interest with me or my clients or my concern as he did some of the . . . younger salesmen." *Id.* at 20.

Plaintiff further alleges that "at times [Erby] would allow senior employees to harass, verbally abuse, curse at, call [other employees] names and belittle them, all in a scheme to run them off[, s]o there would be no competition from them in making sales." *See* EEOC Letter [43-1] at 3. Plaintiff feels it was a "conflict of interest for [Erby, as Metro Ford's general manager,] to be working deals or accepting sale calls or intercepting customers from salesmen and then giving [the customer] to one of their picks." *Id.* at 2. Plaintiff asserts that his attempts to discuss work-related complaints with management were rebuffed; he was "told[] if I didn't like the way Metro Ford do[es] business I could get my box and leave[,] which seems to be the famous saying[.]" *Id.* Plaintiff testified that Erby would say regularly, "If you don't like what's going on, get your shit, your box[,] and leave." Pl.'s Dep. [61-1] at 96. Another former Metro Ford car salesman, Willie Gardner, also referred to this statement, which he recognized as a standard reaction to an employee complaint at Metro Ford: "If you complained or if you questioned the way things were being done, . . . on several occasions[,] it was said if you don't like the way things are done here at Metro Ford you can get your shit and leave." Gardner Dep. [61-4] at 22. In response to Plaintiff's contentions, Metro Ford maintains that Plaintiff never complained to

Erby about being dissatisfied with his work conditions. Plaintiff contends in reply that although he attempted to complain to Erby, Erby would not listen to him and "[a] lot of times he said, you know, what we said didn't matter." Pl.'s Dep. [61-1] at 20–21. Plaintiff maintains that Metro Ford would allow younger salesmen to make sales with only $100.00 in profit, but would not approve Plaintiff's sales without a $2,000.00 profit. Specifically, Plaintiff testified:

> What I mean was [Erby] didn't pencil my deals like he penciled younger salesmen's deals. He would take their deal, if it was $100 profit versus my deal[. I]f I didn't show a $2,000 profit it wasn't no deal. But if this next salesman came in and it was $100 profit, it was a deal, just to give him at a . . . certain number, so at a certain number he would have a bonus at the end of the month.

Pl.'s Dep. [51-2] at 14. Plaintiff testified that several times he was not able to sell a car because Erby would not communicate with him. Defendant refutes this argument by attaching exhibits showing nine commission vouchers issued to Plaintiff—eight of the vouchers revealing commission in the $100.00–200.00 range on purchases and one revealing $500.00 commission on a purchase. Defendant further challenges Plaintiff's contentions by attaching an exhibit showing the income of several car salesmen, and revealing that in 2009, Plaintiff earned an amount that was at least more than or relatively close to what three of his purported comparators earned.

Gary Waddle, a sixty-four-year-old former Metro Ford car salesman, testified by deposition that he believed age was a factor in Metro Ford's treatment of the Plaintiff: "I[ ] think it was age and he didn't fit in with the boys and he wasn't one of their good ole boys. When he got off [work] he went home to his family in Fulton, didn't socialize." Waddle Dep. [61-3] at 15. However, Waddle also stated that young and older employees alike often had trouble fitting in with the Metro Ford culture, and that Waddle himself had quit after only a few weeks of work at Metro Ford because of his concerns that he did not fit in with the work culture at Metro Ford.

12

Willie Gardner, a former Metro Ford car salesman who was terminated after an exchange of words with the finance manager, testified that he observed an incident in which Erby did not assist the Plaintiff when the Plaintiff was assisting one customer while another customer (who happened to be Gardner's cousin) waited, impatiently, for the Plaintiff's assistance. Gardner testified that although Erby usually assisted other salesmen with the same problem, he did not assist Plaintiff. However, upon cross-examination, Gardner revealed that Erby did ask Gardner to try to talk Gardner's cousin into not leaving Metro Ford, and when that did not work, Erby asked Gardner to call his cousin and ask her to come back to Metro Ford. Gardner's cousin ultimately did return to Metro Ford and purchase a car that day.

Plaintiff maintains that the day before he was terminated, Plaintiff was told that he was going to be written up for not reporting to work on the previous Sunday. Plaintiff responded that the previous Sunday was a nonmandatory attendance day. Plaintiff testified that Erby began "making up other things" about his work. Then, the next day, on April 26, 2010, Erby terminated the Plaintiff.

The Court finds that Plaintiff has not presented substantial evidence of pretext to sustain his case past summary judgment. First, the Court notes that Plaintiff at the outset failed to argue against the dismissal of his age discrimination claims in his response to Metro Ford's motion for summary judgment. It is not the duty of this Court to provide plaintiffs with arguments they neglect to generate. *See Williams v. Valenti*, 432 F. App'x 298, 303 (5th Cir. 2011) (noting that the district court is "not required to search the record in support of evidence supporting a party's opposition to summary judgment"); *In re Cao*, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is]

13

presented"); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). Second, Plaintiff otherwise fails to point to specific evidence showing that the reason behind Defendant's decision was age discrimination. For example, Plaintiff sets forth no specific evidence of direct or indirect remarks or expressive conduct concerning Plaintiff's age by any of the decisionmakers. He presents no pattern or practice of age-based discrimination at Metro Ford. Instead, he describes an unfair work environment in which superiors play favorites, and does not present sufficient evidence that any perceived unfair treatment is age-related. Plaintiff has presented evidence to the Court that points more towards finding Metro Ford's termination of the Plaintiff was motivated by favoritism and not illegal age discrimination. "The ADEA was not intended to be a vehicle for judicial second guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988) (citations omitted). For these reasons, Plaintiff's age discrimination claim must be dismissed on its merits, as there are no genuine disputes of material fact with respect to this claim.

### 2. Retaliation Claim

Plaintiff also alleges that his termination constitutes retaliation in violation of the ADEA and the FLSA. The ADEA makes it unlawful for an employer

> to discriminate against any of his employees or applicants for employment, . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).

14

The FLSA makes it unlawful for anyone "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA.]" 29 U.S.C. § 215(a)(3). The United States Supreme Court recently clarified that "the statutory term 'filed any complaint' includes oral as well as written complaints within its scope." *Kasten v. Saint-Gobain Performance Plastics Corp.*, _____ U.S. _____, 131 S. Ct. 1325, 1327, 179 L. Ed. 2d 379 (2011). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335. An informal complaint can constitute protected activity. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 625 (5th Cir. 2008). The Fifth Circuit has explained:

> The circumstances that may constitute an informal complaint under the FLSA have included an employee's "outburst following her refusal to take part in what she thought was an unlawful scheme"FN9; the fact that an employee "complained to the school district of unlawful sex discrimination and had told them she believed they were 'breaking some sort of law' by paying her lower wages than previously paid to male temporary custodians"FN10; the complaints of female employees to a co-owner of the employer and to a foreman "about the unequal pay" despite the absence of a formal EEOC complaint at the time of retaliatory dischargeFN11; and sending a memo requesting a pay raise to the president of the employer with an attached copy of the Equal Pay Act.FN12[3]

───────────────

[3] FN9. *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 180 (8th Cir. 1975).

FN10. *E.E.O.C. v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992).

FN11. *E.E.O.C. v. White and Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989).

FN12. *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 384, 386 (10th Cir. 1984).

*Hagan*, 529 F.3d at 626. The Fifth Circuit goes on to state that "[i]t is clear these cases require the informal complaint to concern some violation of law." *Id.* The question is whether a complaint was "framed in terms of the potential illegality." *See id.*

### a. Prima Facie Case

A plaintiff establishes a prima facie case of retaliation under the FLSA and/or the ADEA by showing: (1) that he engaged in activity protected by the ADEA and/or the FLSA; (2) that an adverse employment action occurred; and (3) that a causal connection existed between the participation in the protected activity and the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (ADEA); *Hagan*, 529 F.3d at 624 (FLSA). Once a prima facie case is established, the burden shifts to the defendant to prove a legitimate, nondiscriminatory purpose for the adverse employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the defendant meets this burden, the plaintiff must prove that the employer's proffered legitimate, non-retaliatory reason is pretext for a retaliatory purpose. *Id.* The plaintiff must prove that "the adverse employment action taken against [her] would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

To establish a prima facie case of retaliation, a plaintiff must first show that he was engaged in a protected activity, that is, Plaintiff must have put Metro Ford on notice of his age-discrimination complaints. Because it is undisputed that at the time of Plaintiff's discharge he had not initiated any official proceeding against Metro Ford, the Court must determine whether Plaintiff filed a complaint, as provided in the ADEA and/or the FLSA.

16

Plaintiff alleges that he was discharged because he informed Metro Ford about his complaints of age discrimination and that he was filing an EEOC charge, and his complaining about acts which would violate the ADEA and/or the FLSA, including his belief that he was not paid the full amount of wages for the hours he had worked.[4]   Metro Ford maintains that Plaintiff's EEOC charges were not filed until June 7, 2010, and August 5, 2010, after his termination from Metro Ford on April 26, 2010, and "[a]s such, [Plaintiff] cannot argue that Metro Ford retaliated against him for filing these [age-related] Charges." *Id.* n.2.   Defendant contends that Plaintiff "has offered no documents that support [his] contention that he complained about age discrimination while still employed at Metro Ford, and [Erby] denied receiving or knowing about any age-related complaints by [Plaintiff].  Without knowledge of a complaint, it is elementary that a party cannot retaliate against another for having made the complaint." *Id.*  Plaintiff maintains, however, that he made several verbal complaints to Metro Ford that younger employees were favored.

Defendant additionally contends that Plaintiff filed a complaint with the United States Department of Labor for unfair wage practices after his termination from Metro Ford.[5]  Plaintiff maintains that he verbally complained to Metro Ford about wages through one direct conversation with Erby and several other instances in which he "kind of hint[ed] to it."  Pl.'s Dep. [61-1] at 67–68.   Although Metro Ford contends that Plaintiff's only evidence of complaints to Metro Ford is Plaintiff's self-serving testimony "that he verbally complained to Kenny Johnson, a sales manager at Metro Ford, and [Erby]," Def.'s Mem. Br. Supp. MSJ [52] at

---

[4] Deposition testimony from other former Metro Ford car salesmen reveals the salesmen's similar belief that they were not paid for any time worked per week over forty hours, but that this was Metro Ford's standard practice.

[5] The United States Department of Labor found Metro Ford had underpaid the Plaintiff in violation of the FLSA and ordered Metro Ford to pay the Plaintiff $405.01.

11, fellow former Metro Ford car salesman Gardner did testify that Plaintiff was the type to vocalize his frustrations with his work environment.

Defendant further contends that Plaintiff's alleged complaint letter to the EEOC does not directly assert an age discrimination complaint, but even if it did, Plaintiff presents no proof that Erby or anyone else at Metro Ford had any knowledge of the existence of the letter until the day that Plaintiff was terminated. Defendant claims the letter does not show that a copy was ever delivered by mail or otherwise to anyone at Metro Ford, nor is there any documentary evidence that the letter was ever even sent to the EEOC. Metro Ford maintains that Erby first became aware of the letter only after he had terminated Plaintiff. Defendant maintains it could not have retaliated against him without knowledge of the letter and thus that Plaintiff's retaliation claim must be dismissed.

In the case *sub judice*, Plaintiff has failed to show that the decisionmakers were aware of his complaints before Metro Ford made the decision to terminate him. Plaintiff presents self-serving testimony in which he maintains he complained to decisionmakers that he felt discriminated against due to his age, but was met with rebuffs, and attempted to hand-deliver a copy of a handwritten complaint letter to Metro Ford, only for Metro Ford to refuse to accept it. The only other evidence supporting this point is Gardner's testimony that the Plaintiff was the type to speak up to management when something at work bothered him. It is likely, based on the deposition testimony before the Court, that Plaintiff may have complained to Erby or others in management about what he considered to be an unfair work environment. However, there is simply no evidence before this Court to suggest that any of these possible internal complaints mentioned age discrimination or wage-related issues. The Court finds that this evidence alone is not sufficient to establish that the Plaintiff engaged in a protected activity, and certainly not

18

enough to sustain this claim past summary judgment. *See, e.g., Tratree v. BP North Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (plaintiff properly found not to have engaged in protected activity because plaintiff failed to put defendant on notice of his complaints about age-based discrimination by merely complaining of unfair treatment directly in relation to younger, less senior employee); *Harris–Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (unpublished) (plaintiff's complaint of harassment in the workplace with no mention of race or sex did not put employer on notice that her complaint was based on unlawful discrimination and thus did not constitute protected activity).

However, assuming, *arguendo*, that the Plaintiff did engage in a protected activity, to establish a prima facie case of retaliation, the Plaintiff would next be required to show "that he suffered a materially adverse employment action." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–69, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). The Court views the Plaintiff's proof applying an objectively reasonable standard. *Id.* at 69, 126 S. Ct. 2405. It is undisputed that Plaintiff was terminated from his position as a car salesman at Metro Ford, which is a materially adverse employment action. Thus, this element is met.

Assuming, *arguendo*, that the Plaintiff had established the first two elements of his prima facie case, the Court next looks to see whether he has established that a causal connection existed between the participation in the protected activity and the adverse employment action. The Court finds that because Plaintiff has not shown that Metro Ford received notice of Plaintiff's age-related complaints, no causal connection existed. *See Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) ("[I]n evaluating causation the focus must be on the final decisionmaker; that is, the plaintiff must present evidence that the final decisionmaker with

19

respect to the adverse employment action was aware of the plaintiff's protected conduct.")).

Although the Court has found the retaliation claim must be dismissed as a matter of law and need not reach the issue of the applicable causation standard in a retaliation claim brought under the ADEA and/or the FLSA, the Court notes the following.

Plaintiff argues that he has established a prima facie case of retaliation by offering proof of temporal proximity between his complaints about age discrimination and minimum wage violations and his termination. Defendant argues that temporal proximity is not sufficient, and further that "[i]n addition to having no valid comparators and having made no complaints to Metro Ford before his termination, [Plaintiff's] discharge had nothing to do with those alleged complaints. [Plaintiff] was fired solely for his misconduct in the sale of the Aviator." Def.'s Mem. Br. Supp. MSJ [52] at 14. "Temporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is 'very close.' " *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). *See Clark Cnty. Sch. Dist.*, 532 U.S. at 273, 121 S. Ct. 1508 (citing cases holding that three-to-four month periods are insufficient to establish causality; *Barkley*, 433 F. App'x at 260 (four-month gap, standing alone, not sufficient to establish prima facie case of retaliation). *See also Fanning v. Metro. Transit Auth.*, 141 F. App'x 311, 314 (5th Cir. 2005) (no causal connection shown between previously planned termination and the ADEA-protected activities of complaining to HR or filing an EEOC claim). The Court finds that Plaintiff has failed to establish a prima facie case of retaliation. However, even assuming, *arguendo*, the Plaintiff has established a prima facie case, his retaliation claim fails otherwise.

### b. Legitimate, Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case of retaliation under the ADEA and/or the FLSA, the defendant must then articulate a legitimate, nondiscriminatory reason for its employment action. As discussed above with respect to Plaintiff's age discrimination claim, Metro Ford asserts that Plaintiff was terminated for participating in the sale of a vehicle Metro Ford had on consignment that was outside the terms of the consignment agreement. This articulated reason satisfies Defendant's burden of production.

### c. Pretext

Plaintiff presents no new evidence of pretext under his retaliation claim. The Fifth Circuit has yet to extend the "motivating factor" burden of proof to FLSA retaliation claims. *See Casey v. Livingston Parish Commc'ns Dist.*, No. 07-30990, 2009 WL 577756 (5th Cir. Mar. 6, 2009). Thus, this Court must analyze whether retaliation was the "but for" cause of Plaintiff's termination. The Court finds that Plaintiff has failed to show his termination was the result of his complaints, and as such, has failed to show that retaliation was the "but for" cause of his termination. Accordingly, Plaintiff's retaliation claim fails on this ground, as well.

### D. Conclusion

In sum, Defendant's motion for summary judgment [51] will be GRANTED, as the Court finds there are no genuine issues of material fact as to Plaintiff's claims and Defendant is entitled to judgment as a matter of law on all claims.

A separate order in accordance with this opinion shall issue this day.

This, the 1st day of May, 2012.

_____

SENIOR JUDGE